**Natilia Denise PHILLIPS, Plaintiff,**

v.

**HIBBETT SPORTING GOODS, INC., Defendant.**

**No. 2:03–CV–235–F.**

United States District Court, M.D. Alabama, Northern Division.

April 7, 2004.

an hourly fee arrangement between the law-   yer and client.

Gregory O'Dell Wiggins, Kevin Wade Jent, Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Plaintiff.

Charles Andrew Stewart, III, Bradley Arant Rose & White, LLP, Montgomery, AL, James Walker May, Laura W. Jordan, Thomas Matthew Miller, Bradley Arant Rose & White, LLP, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

## I. INTRODUCTION

Plaintiff Natilia Denise Phillips (hereinafter "Phillips") brings suit against her former employer Hibbett Sporting Goods, Inc (hereinafter "Hibbett"). Phillips alleges that Hibbett discriminated against her on the basis of her race and sex when it failed to promote her to an Assistant Manager position. Phillips further alleges that when she complained about the alleged discrimination against her, Hibbett terminated her employment in retaliation against her for complaining about discrimination. This cause is presently before the Court on Defendant Hibbett Sporting Goods, Inc.'s Motion for Summary Judgment (Doc. # 16) filed on January 16, 2004. For the reasons set forth below, the motion is due to be GRANTED.

## II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964 as amended). The parties do not contest personal jurisdiction, and the Court finds adequate allegations in support of personal jurisdiction. Hibbett initially challenged the appropriateness of venue, but has since stipulated that venue is proper in this Court. (Doc. # 31). Phillips contends that venue is appropriate in this Court. (Doc. # 32). Based on 42 U.S.C. § 2000e–5(f)(3) and *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 654 n. 11 (11 th Cir.1993), *cert. denied*, 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994), the Court agrees.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## IV. FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

### A. Hibbett

Hibbett owns and operates retail sporting goods stores that are generally located in small communities throughout Alabama and maintains its corporate headquarters in Alabama. Hibbett focuses on providing customer service and quality merchandise. Hibbett stores operate within districts and a District Manager oversees operations of stores within the district. Individual stores generally operate with a staff that includes the following: a Store Manager sometimes called the "Head Coach;" one or two Assistant Managers sometimes known as "Assistant Coaches" or a Manag-

er–In–Training; and several employees who serve as cashiers and sales people sometimes called "Team Players" and "Rookies." All store employees are employees at-will.

Hibbett is an equal opportunity employer and included in its Personnel Policy Manual is a statement regarding its position on equal employment opportunities within the company. The Personnel Policy Manual also sets forth Rules of Conduct and Causes of Discipline. "Insubordination toward members of supervision" is one of several enumerated offenses which can result in immediate dismissal of an employee. Additionally, the following offenses are listed among those actions which can be grounds for "disciplinary action and/or dismissal": (1) immoral, disorderly or indecent conduct including the use of abusive, profane or threatening language; (2) engaging in behavior designed to create discord or lack of harmony or willfully restrict work output or encouraging others to do the same; and (3) spreading rumors, anti-Company remarks or displaying a negative attitude.

### B. Phillips' Employment With Hibbett

Phillips is an African–American female. In December of 2000, she took a position with Hibbett in its Western Hills store in the Birmingham area. She was hired into a part-time position. Eventually, Phillips requested a transfer to the Hibbett store in Selma because she wanted to move back to Selma. Hibbett approved the transfer request and effective January 9, 2001, Phillips worked at Hibbett's store in Selma. Her position in the Selma store was cashier/salesperson just as it had been in the Western Hills store and her employment continued to be on a part-time basis. Phillips worked at the Selma store until she was discharged on January 28, 2002. While complaining in this action of race

and sex discrimination, Phillips admits that during the time she worked for Hibbett, Phillips never heard anyone make a racially derogatory comment or use a racial slur, nor did she hear anyone make a sexual or gender slur or derogatory comment.

When Phillips started at the Selma location the store Manager was a woman named Marie Brown (hereinafter "Brown"). Brown is a Caucasian female. When Brown left her position, Annette Bennett (hereinafter "Bennett"), an African–American female, became the Manager of the Selma store. While Bennett was Manager, the Selma store had two Assistant Managers: Lorinda Thomas (hereinafter "Thomas"), a Caucasian female, and Carmen Lesure (hereinafter "Lesure"), an African–American female. The District Manager at this time was Steve Walker (hereinafter "Walker"), a Caucasian male. Phillips has no complaints about her employment during the time Bennett was the Manager of the store.

On June 3, 2001, Bennett and Thomas left the Selma store. Chris Bundrick (hereinafter "Bundrick"), a Caucasian male, replaced Bennett as Manager. It would appear from the record that Thomas' position was not immediately filled. At the end of July or the beginning of August of 2001, Lesure announced that she was leaving to work for another store where she could receive more money. Despite Bundrick's attempt to convince Lesure to continue working for Hibbett, Lesure left Hibbett in August of 2001.

In late September of 2001, Stephen Beck (hereinafter "Beck")[1], a Manager–in–Training at Hibbett's Auburn store, transferred to the Selma store as a full-time Manager–in–Training.[2] He remained in that position until he left Hibbett in January of 2002. During the time that Beck worked at the Selma store, Bundrick did not fill the Assistant Manager positions because he felt that he could effectively operate the store with a Manager and a Manager–in–Training until he could make the hiring decisions for the Assistant Manager positions.

During Phillips' employment at the Selma store she received one written warning from Bundrick. In September of 2001, Bundrick gave Phillips a written warning for refusing to perform assigned work. Bundrick had asked Phillips to clean some shelves and shoe plates, and she told him that she was only going to dust off the shelves because felt that he should have asked someone else to do the task. Phillips does not dispute that she failed to do all that Bundrick asked her to do and explained at her deposition that she did not think it was fair that she be asked to do these tasks when she was busy helping customers and other employees were not working.

After working with Phillips for some time, Bundrick developed doubts about Phillips' readiness for promotion to Assistant Manager. It is undisputed that other store employees complained to Bundrick that Phillips was difficult to work with and that she was bossy. Bundrick worried that her difficulties interacting with her co-workers would make her a less effective manager and would create problems in the store environment. Additionally, Bundrick observed that at store meetings, Phillips reacted negatively to another employee's ideas. Bundrick also observed a confrontation between Phillips and a District Manager. After the confrontation, the District Manager suggested that Bundrick termi-

---

1. Beck is a Caucasian male.

2. Phillips admits that she is not complaining about not being promoted into the Manager–in–Training position which Beck filled.

nate Phillips employment, but Bundrick elected to retain her. Finally, Bundrick and two different District Managers observed instances in which Phillips failed to speak to other employees.

## C. The Promotion Decisions Challenged in this Suit and Phillips' Reaction

Prior to Lesure's last day with Hibbett, Phillips had a conversation with Bundrick in which she made her interest in being promoted to Assistant Manager known to him. At this time, Bundrick told Phillips that he was going to try to fill the position with someone from outside of the store, but he also told her that he would consider her for the position and talk it over with the District Manager. Phillips had other subsequent conversations with Bundrick about promotion into the Assistant Manager position Lesure vacated. She would ask about the possibility of promotion and Bundrick would tell her he had to talk to the District Manager. At least one of Phillips' queries to Bundrick occurred in November of 2001 and one occurred in December of 2001. When Phillips approached Bundrick with this query in December of 2001, he told her that they were looking to fill the position with someone from inside the store and that he would let her know something in January of 2002. Phillips admits that she does not know if other store employees had asked about promotion to the Assistant Manager positions.

The Assistant Manager positions remained open until January of 2002. Prior to making the decision regarding which employees should be promoted to Assistant Manager, Bundrick discussed Phillips' demeanor, attitude, and disciplinary problems with Steve Walker, then the District

Manager for the district in which the Selma store was located. Walker and Bundrick agreed that despite her expressed interest in the position, she was not ready for a position as an Assistant Manager.

In January of 2002, Hibbett promoted Hobson Curry (hereinafter "Curry") and Chris Griffin (hereinafter "Griffin") to Assistant Manager positions. Curry is a Caucasian male. Griffin is an African–American male. Bundrick decided that Curry and Griffin should be promoted. Phillips admits that she found Griffin and Curry both to be nice people who got along with other employees, but argues that she should have been promoted because she had worked at the Selma store for longer than either Griffin or Curry.

Bundrick considered Griffin the top candidate for promotion to Assistant Manager because he maintained a friendly attitude, provided superior customer service, and worked hard. Moreover, Bundrick viewed Griffin as not difficult to supervise and knew that Griffin had no disciplinary write-ups during his employment with Hibbett. Bundrick considered Griffin a better candidate than Phillips because Bundrick felt his attitude was better, his customer service was better,[3] he was a better overall worker, he was easier to supervise and unlike Phillips, he had no disciplinary issues. Moreover, unlike Phillips, Griffin had not been the subject of complaints by co-workers.

Bundrick considered Curry to be the second best candidate for the Assistant Manager position. Bundrick viewed Curry to be easy to supervise and noted that he had a friendly attitude. Moreover, Curry had no disciplinary write-ups. Bundrick considered Curry's customer service to be excellent and believed that Curry

---

**3.** It is undisputed that a local newspaper wrote a favorable article about Griffin's cus- tomer service skills during the Thanksgiving 2001 shopping season.

was a better salesperson than Phillips. Bundrick attended church with Curry and knew he would be able to work well with him. Curry had not been the subject of complaints by co-workers. Finally, Curry had experience as a college athlete which Bundrick felt gave him an edge in promoting products.

Phillips admitted that she does not know Curry's background or Griffin's background and that she does not know whether either Curry or Griffin was qualified for the Assistant Manager position. Phillips gave mixed testimony regarding whether she subjectively believed that she was more qualified for the Assistant Manager position than Curry or Griffin. At one point in her deposition, Phillips conceded that she did not contend that she was more qualified than Curry or Griffin for the Assistant Manager position, but she stated that she had been there for a year and should have been given a chance in the position rather than being told that management didn't think she was ready. At another point in her deposition, she testified that she thought she was more qualified because she had been working at the Selma store for a year and because she worked hard, tried to do what she was told, and came in to work other employees' shifts were asked to do so. Phillips considers herself a good salesperson, but not necessarily better than Curry or Griffin. Phillips speculated that Bundrick selected Griffin and Curry for promotion because it was "a buddy thing."

**D. Events Leading Up to the Termination of Phillips' Employment with Hibbett**

Phillips had a conversation with Bundrick a "few weeks" before January 28, 2002. Phillips told Bundrick that she felt she had been treated unfairly because Bundrick had not promoted her, but during this conversation she did not mention that she believed the unfair treatment was due to her race or sex. During that conversation, Bundrick told Phillips that the District Manager felt that she was not ready for promotion to the Assistant Manager position. Phillips asked Bundrick why he felt she wasn't ready for the position, but Bundrick did not tell her. After this conversation, Phillips did not have a conversation with the District Manager or anyone in human resources with Hibbett about the decision not to promote her.

On January 22, 2002, Phillips saw Curry wearing an Assistant Manager name tag and realized that he had been promoted. After work, Phillips told her parents she had not gotten the promotion and her parents recommended that she see an attorney. Phillips made arrangements to see an attorney because she felt that she had been discriminated against.

On Sunday, January 27, 2002, Phillips attended a store meeting. At the store meeting, Phillips admits that she was upset because she felt that she had not been treated properly with respect to the Assistant Manager promotion. In Bundrick's view, Phillips' attitude and participation at this meeting was poor.

At the end of the January 27, 2002 store meeting, Phillips asked Bundrick if she could talk to him. She asked to talk to him because she wanted to ask him why he was giving her the runaround and why he had told her about the Assistant Manager position if he wasn't going to promote her. She also wanted to ask him again why he felt like she was not ready for promotion even though he had previously declined to elaborate on his reasons for that belief about her. He told Phillips that they could have a meeting the next day in his office in the store. Phillips and Bundrick did have a meeting as scheduled in his office on January 28, 2002. Upon her

attorney's advice, Phillips surreptitiously tape-recorded this meeting with Bundrick without his knowledge.

Although Phillips does not recall all that was said during the January 28, 2002 meeting, the parties have made a copy of the tape-recording and what purports to be a transcript of that tape-recording part of the evidentiary record in this case.[4] During the January 28, 2002 meeting with Bundrick, Phillips repeatedly complained that she had been "lied to" and she told Bundrick that she didn't want him to "lie" to her or give her excuses.[5] Phillips further complained to Bundrick that she was a better employee than either Curry or Griffin and that she had been at the store longer. Bundrick told Phillips that he had talked to Walker about Phillips' desire to be promoted to Assistant Manager and that Walker indicated that he was not favorably inclined to promote Phillips due, at least in part, to his belief that he had observed Phillips talking rather than working one day when Bundrick was out of the store and Walker had stopped at the store. Several times during the conversation, Phillips interrupted Bundrick's attempt to answer her questions. Phillips also frequently contradicted what Bundrick was saying.

Eventually, Phillips stated that the promotion of Curry and Griffin was "nothing but discrimination toward [her]" because she had been working there longer and because she worked hard and did all she was asked to do. Bundrick replied that the decision was made and Curry and Griffin were managers. After Phillips' first use of the word "discrimination" in this conversation, Bundrick did not immediately tell Phillips that her employment was terminated, as Phillips' counsel appears to argue.

After Phillips raised her claim of discrimination the conversation between Bundrick and Phillips continued. Bundrick said that he felt Phillips' attitude at the January 27, 2002 meeting had been poor. Phillips retorted that she was sleepy and that she had not wanted to come to the meeting, but that she had listened. Bundrick explained that Walker and White, a previous District Manager, had previously urged Bundrick to "let her go," but that Bundrick had instead decided to "let her stay on." Phillips argued that they had no reason to want to let her go, and when Bundrick tried to explain what the District Managers had said, Phillips interrupted him again stating that they didn't want her to be an Assistant Manager because she was "a girl" and that was discrimination. Phillips pointed out that she had worked hard and come in to work whenever Bundrick asked her and then accused him of trying to "betray" her, to "lie to [her] face," and to "sell [her] some stuff." Phillips stated that she used to "respect [Bundrick] as a man," but that she no longer

---

4. The Court has reviewed both the tape-recording and the transcript of the tape-recording submitted by the parties. The transcript does not appear to be an official transcript prepared by a *professional transcriptionist*; however, the Court found it consistent with the tape-recording submitted in evidence.

5. It is clear from the transcript of the meeting and Phillips' deposition testimony that she believed that she had never really been considered for the Assistant Manager position and that Bundrick had never spoken to Walker about promoting her. During her approximately eight minute meeting with Bundrick, Phillips repeatedly used various versions of the word "lie" or synonymous colloquial phrases such as "that's a story." Phillips admits that she does not actually know whether Bundrick spoke with Walker. Consequently, the fact that Bundrick did speak to Walker about Phillips' interest in promotion to Assistant Manager, as established by his sworn affidavit and Walker's sworn affidavit, is undisputed.

did. At this point, Bundrick told Phillips that was "fine" and that after this meeting she was "done with Hibbetts." Phillips again said something about "discrimination" and argued that Bundrick was firing her because of what she had said.

Thus, at the conclusion of the January 28, 2002 meeting, Bundrick had terminated Phillips' employment with Hibbett. The reasons given for the termination of Phillips' employment on the Personnel Change Notice form Bundrick prepared was that Phillips "had a negative action toward [Bundrick] and insulted [him] and said she didn't respect [him]." In his affidavit, Bundrick reiterates that he based his decision to terminate Phillips' employment on her insulting comments during the meeting and her continued negative attitude and demeanor. Bundrick denies that he took any action against Phillips, including terminating her employment, because of her race, sex, or claim of or reference to discrimination.

### E. Events After The Termination of Phillips' Employment

On February 2, 2002, Phillips wrote a letter to Michael Newsome, Hibbett's Chief Executive Officer. In the letter she complained that Bundrick had not promoted her to the "assistance [sic] manager" position at the Selma store. She complained that Curry and Hobson, who had been working in the store for a shorter time than she had been working there had been "moved over her." Phillips also described the January 28, 2002 meeting with Bundrick. In the letter, Phillips states that she felt that Bundrick had lied to her about the promotion and that she had informed Bundrick "that he had lied to [her]" in the January 28, 2002 meeting. Arguing that she had been a hard worker, Phillips concludes by stating that she thinks "this situation was unfair and was

not handle [sic] properly." Nowhere in this letter does Phillips assert that the promotional decision constituted race or sex discrimination. Moreover, nowhere in this letter does Phillips assert that the termination of employment was either discrimination on the basis of race or sex or retaliation for complaining about discrimination.

On February 5, 2002, Phillips filed a Charge of Discrimination with the Equal Employment Opportunity Commission. In this sworn Charge of Discrimination, Phillips complained that she was denied promotional opportunities on the basis of her race and sex. She also complained that the termination of her employment was retaliatory and discriminatory. On February 23, 2003, Phillips initiated this lawsuit against Hibbett raising the same allegations as she raised in her Charge of Discrimination.

## V. DISCUSSION

### A. Phillips' Claims of Allegedly Discriminatory Failure To Promotion

██ Title VII makes it an "unlawful employment practice" for an employer to fail or refuse to promote any individual because of her race or sex. See, e.g., 42 U.S.C. § 2000e–2(a); Sledge v. Goodyear Dunlop Tires N. Am. Ltd., 275 F.3d 1014, 1018 (11th Cir.2001) (race); Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267–68 (11th Cir.2001) (sex); Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir.2000), cert. denied, 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001) (sex); Norrell v. Waste Away Group, Inc., 246 F.Supp.2d 1213, 1220–21 (M.D.Ala.2003) (sex); Gaddis v. Russell Corp., 242 F.Supp.2d 1123, 1134–35 (M.D.Ala.), aff'd without opinion, 88 Fed.Appx. 385 (11th Cir.2003) (race). Similarly, Section 1981 provides a remedy to those who can show that they were discriminated against on the basis of their

race by their employer with respect to a promotional decision. *See, e.g., Sledge,* 275 F.3d at 1018; *Gaddis,* 242 F.Supp.2d at 1134–35.

Phillips claims that she was discriminated against on the basis of her sex when Hibbett promoted Curry and Griffin to Assistant Manager instead of promoting her. Additionally, she contends that the decision to promote Curry constituted discrimination against her on the basis of her race, but admits that the promotion of Griffin, who like Phillips is African–American, does not constitute race discrimination.

Because Phillips relies upon circumstantial evidence, rather than direct or statistical evidence, her discrimination claims are properly analyzed using the burden shifting paradigm developed in *McDonnell Douglas v. Green* and its progeny. *See, e.g., McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This same approach applies to race and sex discrimination claims pursuant to Title VII, as well as to claims pursuant to Title VII and Section 1981.[6] Under this approach, the plaintiff has the burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. 1817. This *prima facie* case requires "evidence adequate to create an inference that an employment decision was based on a[n] illegal discriminatory criterion." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The plaintiff's establishment of a *prima facie* case raises a presumption of illegal discrimination. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Chapman v. AI*

*Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc* ).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment action. *Holifield v. Reno,* 115 F.3d 1555, 1564–65 (11th Cir. 1997). "This intermediate burden is 'exceedingly light.'" *Id.* (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994)). The defendant has only a burden of production, not a burden of persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Burdine,* 450 U.S. at 253–55, 101 S.Ct. 1089.

Once the defendant satisfies this burden of production,

> the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.

*Chapman,* 229 F.3d at 1024 (internal citations and quotations omitted). The establishment of the *prima facie* case does not, in itself, entitle the plaintiff to defeat a defendant's motion for summary judgment. After the defendant proffers a legitimate reason for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory

---

**6.** Both Title VII and Section 1981 have the same requirements of proof and use the same analytical framework. *See, e.g., Standard v.*

*A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998), *reh'g en banc denied,* 172 F.3d 884 (11th Cir.1999).

reasons is pretextual." *Chapman,* 229 F.3d at 1037.

Phillips has established *prima facie* case with respect to her claims of discrimination on the basis of her race and sex with respect to the Assistant Manager promotions in January of 2002. To establish a *prima facie* case in a failure to promote claim, the plaintiff must prove the following four elements:

1) that she belongs to a protected class; 2) that she was qualified for a job for which the employer was seeking applicants; 3) that despite her qualifications, she was rejected; and 4) that, after her rejection, the employer continued to seek applicants or filled the position with a person outside of plaintiff's protected class.

*Gaddis v. Russell Corp.,* 242 F.Supp.2d 1123, 1135 (M.D.Ala.2003). *Accord, Walker v. Mortham,* 158 F.3d 1177, 1186 (11th Cir.1998), *cert. denied,* 528 U.S. 809, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999). With respect to her sex discrimination claim, Phillips has shown the following: 1) that she belongs to a protected class because she is a woman; 2) that she was qualified for an Assistant Manager job for which Hibbett was seeking applicants: 3) that despite her qualifications, she was rejected; and 4) that after her rejection, Hibbett filled the positions with Curry and Griffin, who, as males, were outside of her protected class. Similarly, with respect to her race discrimination claim, Phillips can establish a *prima facie* case with respect to the Assistant Manager position to which Curry was hired because he is not African–American and Phillips is. However, Phillips cannot establish a *prima facie* case of race discrimination with respect to the Assistant Manager position to which Griffin was hired because Griffin, an African–American, is not outside of Phillips' protected class. Moreover, Phillips admit-

ted at her deposition that she does not believe that Griffin's promotion was based on race discrimination against her.

Although Phillips has established a *prima facie* case of race discrimination and a *prima facie* case of sex discrimination with respect to the Assistant Manager promotions, Hibbett has met its burden of production by articulating a legitimate, non-discriminatory reason for its decision to promotion Curry and Griffin, rather than Phillips. Hibbett contends that Phillips was not promoted because she was not ready and Griffin and Curry were better candidates.

Because Hibbett has met its burden by producing admissible evidence articulating legitimate, non-discriminatory reasons for the promotion of Griffin and Curry, the burden shifts back to Phillips to establish that those reasons are pretextual. Phillips may establish pretext by undermining the credibility of Hibbett's proffered explanations. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). Instead of relying on conclusory allegations of discrimination, Phillips must adduce evidence demonstrating "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." *Id.*

Phillips argues that she has adduced evidence to satisfy this burden because when she first asked about promotion to the Assistant Manager position, she was told that Hibbett was going to hire from outside the store and when she later asked about the position, she was told that Hibbett was going to hire from inside the store. In making this contention, Phillips invokes a number of cases which hold that where the employee shows that an employ-

er has proffered several different reasons for an employment decision at different times *after the decision has been made*, the employee has offered sufficient evidence to create a triable issue as to whether the proffered reasons for the employment decision are pretextual.

Importantly, the arguably inconsistent statements about the pool of applicants from which the promotional decision would be made to which Phillips points in this case were both made *before* Hibbett made any decision on filling the Assistant Manager position. This evidence merely shows that prior to making the selection of persons for promotion, Hibbett appears to have changed its mind and decided to promote from within rather than hire from outside the company. This change of heart actually inure to Phillips' benefit as it meant that she would stand a better chance of being considered for the promotions than when Hibbett was inclined to hire from outside the company. Moreover, Phillips' first request to be considered for promotion to the position was not denied,

when made, on the ground that the position would be filled from the outside. To the contrary, Bundrick let her know that Hibbett was trying to fill the position from the outside, but told her that her interest in promotion would be considered. Given that *once the decision was made* to promote Curry and Griffin, Hibbett has been *entirely consistent* in its articulation of the reason for the selection of Curry and Griffin rather than Phillips, the Court finds that this case does not present inconsistencies in articulated reasons sufficient to create a jury question on the issue of pretext.[7]

It is obvious from Phillips' testimony that she believes that the decision to promote Curry and Griffin to Assistant Manager instead of promoting her to that position struck Phillips as unfair because she had been at the Selma store longer than either Curry or Griffin. The "fairness" of such a decision is not before this Court. The issue is whether the decision constituted illegal discrimination on the basis of Phillips' race or sex.[8] Indeed, federal

---

7. Phillips' only articulated argument on the pretext prong of the circumstantial evidence paradigm is what she characterizes as inconsistency in the reasons given by Hibbett for its promotion decision. As explained in this opinion, the Court finds no inconsistency in the reasons given for the promotion decision once it was made and the statements to which Phillips points are, at best, inconsistencies in the description of the eligible pool of applicants from which the promotion would be made. Aside from the alleged inconsistent statements by Hibbett, Phillips does not urge other bases for a finding that the proffered legitimate, non-discriminatory reasons were pretextual. For example, Phillips does not argue that her qualifications were sufficiently superior to those of Curry and Griffin that the disparity in qualifications suffices to establish pretext. Indeed, while this is a recognized way for a plaintiff to establish pretext in a failure to promote case, the standard is a very difficult one to meet. *See, e.g., Cofield,* 267 F.3d at 1268; *Lee,* 226 F.3d at 1253.

8. Phillips does her own case damage when she speculates that Griffin and Curry were selected for promotion because they were Bundrick's "buddies." If Phillips' speculation is correct, then her case challenges the "fairness" of employment decisions based on friendship rather than the legality of employment decisions motivated by racial preference or sex discrimination. Put another way, even if a jury believed Phillips' speculation, Bundrick's decision to promote his friends this would not support a claim of race or sex discrimination. *See, e.g., Brown v. Am. Honda Motor Co., Inc.,* 939 F.2d 946, 951 (11th Cir.1991), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992) ("It is not at all improper for an employer or a business contemplating a long-term relationship to prefer doing business with someone with whom they are familiar.") *Accord, Platner v. Cash & Thomas Contractors, Inc.,* 908 F.2d 902, 905 (11th Cir.1990) (favoritism toward a relative not gender discrimination); *McMillian v. Svetanoff,* 878 F.2d 186, 189 (7th Cir. 1989) (employer's decision to hire someone

courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead [the] sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999), *cert. denied,* 529 U.S. 1109, 120 S.Ct. 1962, 146 L.Ed.2d 793 (2000). *Accord, Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir.2002) (explaining that in analyzing discrimination claims, federal courts must be careful not to let plaintiffs "simply litigate whether they are, in fact, good employees" and must focus on whether the proffered reason for employment decision at issue was an honest one, rather than whether it was a correct one).

Consequently, the record before this Court in this case compels the conclusion that Phillips has failed to create a genuine issue of material fact with respect to whether the legitimate, non-discriminatory reasons proffered for the decision to promote Curry and Griffin to Assistant Manager was a pretext for either race or sex discrimination. Under the applicable legal standards, Hibbett is entitled to judgment as a matter of law on Phillips' claims that she was denied promotion to Assistant Manager on account of her race or sex. Consequently, Hibbett's motion for summary judgment is due to be GRANTED as to those claims.

**B. Phillips' Claims Relating To The Termination Of Her Employment**

**1. Race or Sex Discrimination**

It is undisputed that Bundrick did not give Phillips a reason for the decision to terminate her employment when he did it. Although Phillips' Complaint includes allegations that the termination of her employment was motivated by her race and sex, Phillips admitted at her deposition that she does not, in fact, believe that her employment was terminated because of her race or her sex. Despite Hibbett's argument that it is entitled to summary judgment on these claim because Phillips cannot make out a *prima facie* case of discrimination with respect to the termination of Phillips' employment and because it has proffered a legitimate, non-discriminatory reason for the actions it took with respect to the termination of Phillips' employment, Phillips does not even address these claims in her opposition to Hibbett's motion for summary judgment.

Consequently, it appears to this Court that Phillips has conceded that the termination of her employment was unrelated to her race or sex. Indeed, the Court finds no evidence from which a reasonable jury could find that Phillips established a *prima facie* case of either race or sex discrimination with respect to the termination of her employment. Nothing ties Bundrick's decision to terminate her employment to either her race or her sex and Phillips cannot point to another employee of a different race or sex who engaged in similar conduct, but was not fired. Thus, the Court finds that Hibbett is entitled to summary judgment because Phillips has failed to establish a *prima facie* case with respect to these claims. *See, e.g., Williams v. Motorola,* 303 F.3d 1284, 1293 (11th Cir.2002); *Maniccia v. Brown,* 171

with whom it was familiar was legitimate, non-discriminatory basis for employment action). In this case, the point is moot however because Phillips has no *evidence* that Bundrick promoted Griffin and Curry because of their friendship with him. Phillips offers only her unsupported speculation on this point.

Consequently, the only evidence before the Court on the issue of the rationale for the decision to promote Griffin and Curry is the testimony Hibbett offers that they had superior qualifications than Phillips and that given her history with Hibbett she was not ready for promotion into a management position.

F.3d 1364, 1368 (11th Cir.1999); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Moreover, even assuming *arguendo* that Phillips could established a *prima facie* case supporting these claims, the Court further finds that no reasonable jury could find that Hibbett's proffered legitimate, non-discriminatory reason for the termination of her employment was a pretext for race or sex discrimination.

### 2. Retaliation

■ Phillips' final claim in this action is that the termination of her employment at the end of the January 28, 2002 meeting constituted illegal retaliation against her for complaining about what she considered race or sex discrimination with respect to the promotions given to Griffin and Curry.

> To establish a prima facie case of retaliation, [an employee] must show: (1) she engaged in protected activity; (2) her employer was aware of that activity; (3) she suffered adverse employment action; and (4) there was a causal link between her protected activity and the adverse employment action.

*Maniccia*, 171 F.3d at 1369 (*citing Little v. United Tech.*, 103 F.3d 956, 959 (11th Cir. 1997)).

It is undisputed in this case that Phillips suffered an adverse employment action on January 28, 2002. On that date, Bundrick terminated her employment with Hibbett. Termination is a paradigmatic adverse employment decision. It is further undisputed that if Phillips' complaint about discrimination during that meeting constituted protected activity, Bundrick was aware of that activity.

Hibbett presents several arguments in support of its position that Phillips' conduct in the meeting did not constitute

protected activity. Because it does not concede that Phillips complaint of discrimination constituted protected activity, Hibbett does not address the causal link prong of the *prima facie* case. "To establish that a plaintiff engaged in statutorily protected expression, ... a plaintiff must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir.2002). Protected expression includes filing complaints with the EEOC or through an employer's internal grievance procedure. *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir.1998) (filing EEOC complaint is protected conduct); *Rollins v. Florida Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) (internal complaints of discrimination are statutorily protected conduct). Although the Court has concerns about the manner in which Phillips raised her complaints of alleged discrimination, the Court will assume *arguendo* that Phillips has established a *prima facie* case of retaliation.

The Court finds that even if Phillips could be said to have established a *prima facie* case of retaliation, she has legally insufficient evidence to create a triable issue with respect to Hibbett's proffered legitimate, non-retaliatory reason for the decision to terminate her employment, and Hibbett is entitled to summary judgment on this claim. The analysis of a claim of retaliation based on circumstantial evidence[9] is similar to the analysis of a discrimination claim based on circumstantial evidence. If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. *See, e.g., McDonnell Douglas Corp.*, 411 U.S. at 802, 93

---

9. There is no direct evidence in this case that the decision to terminate Phillips' employ-ment was in retaliation for her complaints of discrimination.

S.Ct. 1817; *Gaddis,* 242 F.Supp.2d at 1148. If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual. *McDonnell Douglas Corp.,* 411 U.S. at 804, 93 S.Ct. 1817; *Gaddis,* 242 F.Supp.2d at 1148. Put another way, it is Phillips' burden to demonstrate that Hibbett's proffered reason for terminating her employment was not the true reason for the decision. *See, e.g., Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1196 (11th Cir.1997). To do this Phillips must produce evidence which creates a triable issue of fact as to the truthfulness of Hibbett's rationale for the decision to terminate her employment. *See, e.g., Johnson v. Booker T. Washington Broad. Service, Inc.,* 234 F.3d 501, 507 n. 6 (11th Cir.2000); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997).

Phillips relies on the timing of the decision to terminate her employment alone to establish, not only the *prima facie* case element of a causal link, but also to contend that Hibbett's legitimate, non-retaliatory reason for terminating her employment is pretextual. Phillips cites no authority for her contention that close temporal proximity between protected conduct and an adverse employment decision can alone create a genuine issue of material fact regarding whether the employer's proffered legitimate, non-retaliatory reason for the adverse employment decision is pretextual. Indeed, the close temporal proximity between protected conduct and an adverse employment decision cannot alone create a genuine issue of material fact on the issue of whether the employer's proffered non-retaliatory reason was pretextual. *See, e.g., Wascura v. City of South Miami,* 257 F.3d 1238, 1244–45 (11th Cir.2001); *Stewart,* 117 F.3d at 1287–88; *Padron v. BellSouth Telecomm., Inc.,* 196 F.Supp.2d 1250, 1256–60 (S.D.Fla.2002), *aff'd with-out opinion,* 62 Fed.Appx. 317 (11th Cir. 2003). *Accord, Tran v. Trustees of State Colls. in Colo.,* 355 F.3d 1263, 1270 (10th Cir.2004). Thus, Phillips' contention that the temporal proximity alone creates a genuine issue of material fact as to whether Hibbett fired her to retaliate against her for complaining about discrimination, is unsupported in law.

The undisputed facts of this case establish that Hibbett's had in place written employment policies which made it a terminable offense to engage in insubordinate conduct, to use abusive language, to engage in behavior designed to create discord or lack of harmony and to make anti-Company remarks or display a negative attitude. Because of the tape-recording of the January 28, 2002 meeting between Phillips and her supervisor, Bundrick, this case also presents a situation in which Phillips cannot and does not dispute that she repeatedly implied that Bundrick was a liar, repeatedly interrupted and contradicted him, and said that she did not respect him as a man. It is undisputed that Bundrick viewed this conduct as both insulting and insubordinate. Furthermore, Bundrick's testimony that Phillips' conduct was the reason he decided to terminate her employment stands undisputed.

Phillips offered no evidence from which a reasonable jury could find that the proffered reason for the termination of her employment was not the real reason for it. There is no evidence that Hibbett ever offered a contradictory rationale for its decision to terminate Phillips' employment. No member of Hibbett's managerial staff ever disclosed to anyone that the real reason for the termination of Phillips' employment was that she had complained about discrimination. Phillips has not identified any other employee of Hibbett who engaged in similar insubordinate or insulting conduct toward Bundrick, but whose em-

ployment was not terminated. The decision to terminate Hibbett's employment was entirely consistent with its written policies, and the termination of her employment was promptly and properly documented with the same stated rationale as Hibbett now presents to this Court. Thus, the Court finds no reason to doubt Hibbett's proffered explanation for its decision to terminate Phillip's employment.

On the record before it, the Court is compelled to conclude that Phillips has not offered sufficient evidence to create a triable issue with respect to the truthfulness of Bundrick's proffered explanation for his decision to terminate her employment. In reaching this conclusion, the Court notes that it is not appropriate for it to second-guess the reasonableness of Bundrick's belief that Phillips had violated company policy and engaged in conduct which constituted grounds for termination of her employment. Therefore, "[n]o matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, the [employment laws] do[ ] not interfere. Rather, [the] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (internal citations and quotations omitted). Consequently, Hibbett is entitled to judgment as a matter of law with respect to Phillips' retaliation claim.

## VI. CONCLUSION

For the reasons stated above, the Court finds that Defendant Hibbett Sporting Goods, Inc.'s Motion for Summary Judgment (Doc. # 16) filed on January 16, 2004 is due to be GRANTED. Accordingly, it is hereby ORDERED as follows:

(1) The Defendant Hibbett Sporting Goods, Inc.'s Motion for Summary Judgment (Doc. # 16) is GRANTED.

(2) The trial scheduled in this matter is CANCELLED.

A separate final judgment will be entered taxing costs.